Case number 18-1763, Secretary of Labor v. Timberline South LLC and others, argument not to exceed 15 minutes per side. Mr. Toyer for the appellants. Good morning, your honors. Good morning. This case presents a number of issues. The first is the issue of coverage of the Fair Labor Standards Act under the Handling Clause. Can you keep your voice up, please? I'm sorry, your honor. Thank you. The first is the Handling Clause under Section 203-S1. Then after that there are issues of the calculation of the overtime in this case. In particular, the application of the Motor Carrier Act exemption under the Fair Labor Standards Act. There is also the issue of whether time, drive to work time and other post and preliminary work time were added into the calculation of overtime, which is a violation of the Portal to Portal Act. And then there is also the issue of whether the calculations themselves have sufficient credibility to have supported the damages that were assessed in this case. Finally is the application of liquidated damages, which under the circumstances of this case, where the structure of the compensation that was given to these employees for their work, even if technically non-compliant with the Fair Labor Standards Act, still resulted in compensation that was far in excess of the average, even accounting for overtime for the industry involved. With respect to the Handling Clause, the district court below relied on the 11th Circuit case in Polycarp v. E&S Landscaping. That case adopted a definition of the term materials, which is important because goods has a separate implication in this case from materials under the Handling Clause. Goods are subject to the ultimate consumer exception, which means Here's the question on this point. So the definition of goods refers to any part or ingredient thereof, and that is the first definition of materials, which would suggest we want to account for both definitions of materials. Otherwise, you have yourself thinking this is a little superfluous. Yes, Your Honor, and it's difficult to get to that because the term materials is not defined in the statute where goods is. Right, so that's the point of that first argument. What does it mean? And if we adopt the definition you want, it starts to make the definition of materials and goods overlap too much to have any sense for the statute. And that's weird because it was materials added in the 1974 amendments, so this wasn't just belt and suspenders. They had some objective. Yes, Your Honor, and the objective that's stated in the one piece of legislative history there is the Senate report that is referred to in several cases. It refers to a single example, and that is soap to a launderer. Soap is not an ingredient. Soap is a thing that is part of the service that's being provided by that launderer. So what we would propose is that the definition of material should be a component part or something that is used in the process of making the product or the service that is being provided by the employer in that case. So soap to a launderer, maybe butter to a restaurant if it's used as part of another thing. Another example might be a chemical that's used by a plastic toy manufacturer. That type of thing. And the legislative history indicates that the term materials was added to get to retail and service industries that arguably weren't incorporated under the simple goods definition before. The example of using it as a component or something that's used in the process of providing the service itself, that gets to that distinction between an ingredient and something else. So, I mean, it sounds too like you're saying that in addition to the examples you're using that this could also be interpreted broadly enough to include a facilitation mechanism or effort. Is that correct? If it facilitates the process or facilitates provision of service, would that come under that definition also? Well, I think so, but it would depend on how far you wanted to take that. Obviously, if you're talking about equipment that's used to hold timber to market, that heavy equipment is going to facilitate that process. Part of that would be, I guess, the mechanism to achieve the process. And I would argue, Your Honor, that that step to the equipment is a step too far. Because what we have here is a definition of goods, and we have the polycarp definition, which was taken from two dictionary definitions, and we provided in our reply brief a number of alternate dictionary definitions that don't include the word tools. So the polycarp court used tools as part of the definition of materials, but then it went a step further, which is I think what is getting to your question, Your Honor. And that's that the polycarp court then said that equipment is part of tools. Well, then the question for this case is, what is equipment? You don't, for example, and again, we're using dictionary definitions, so we're trying to use commonly understood meanings. You don't go to the tool store to buy a big rig truck to haul logs to a timber mill. Equipment is... That's just because of the nature of what we first think of the tool stores. But in those industries, they are effectively tool stores. Now, I'm puzzled why you think the legislative history, the soap analogy helps you. I'm trying to think why you wouldn't use logging equipment. It's kind of similar in soap to laundry. I mean, you can clean clothes in a lot of ways with soap. You can clean them with rocks and water. I mean, so I'm just trying to figure out why logging equipment doesn't actually fit within that legislative history to the extent it's useful. You seem to think it helps you, and I'm not sure I'm understanding why. Well, I'm trying to make all of the provisions of the legislative history make some sense here. Me too. Me too, but you seem to think it helped you, and I the distinction here ultimately for this case is that equipment, that term, the use of heavy equipment for harvesting timber, big rig trucks for hauling over the public roadways, that is not a tool. It's not stated to be a tool. Equipment is not used in the coverage terms of the Fair Labor Standards Act. It's not even in the dictionary definitions that are used by the polycarp case in this case. Equipment is a separate thing. It is a good. You purchase it at an equipment store. You purchase it at a, you know, whatever it might be, a place that sells that type of equipment. It's not the same thing as a tool. It's not what ordinarily is considered a tool, except in the broadest sense, which is I think what you're getting to, and that's that, and the other as well, because while it may facilitate something, everything facilitates the action of an employer. There has to be a line at some point where an employer knows what the regulatory framework that is going to apply to him is, and there is simply no way under the polycarp definition for an employer to know whether what they are doing, whether the equipment they're using, whether the tools they are using, whether the soap or whatever it might be that they are using is going to result in coverage from the Fair Labor Standards Act, and the effect of that is potentially ruinous liability, as it potentially is in this case. So we believe that the polycarp test should not be adopted by this Court, and a more reasonable standard should be adopted that does not even extend to tools, but is simply components or things used in the process of producing the product or the service itself. In the time we've got remaining, I want to quickly discuss the other issues, because they are also very important, and that is in this case, the overtime calculations included all of the drivers. We believe that the driver employees were subject to the Motor Carrier Act exemption. Under the Motor Carrier Act exemption, employees who are subject to regulation by the Secretary of the Department of Transportation are not subject to the Fair Labor Standards Act. They are simply exempt, and in this case, Section 13.501 and 13.502 of the Motor Carrier Act state that the Secretary of Transportation has jurisdiction over transportation over a public highway, and further, that the Secretary may prescribe requirements for qualifications and maximum hours of service for employees of a motor private carrier when needed to promote safety of operation. Timberline, in this case, is a private motor carrier, and because of that, the Secretary has the authority to regulate the qualifications and the terms and the hours of service. So it's interstate work, and the only way your argument applies is if it's continuous on its way to interstate commerce, right? That's the key pivot point? Well, that could be one, but more specific is Section 31.502 of the Motor Carrier Act, which provides that the Secretary has jurisdiction to regulate employees who operate on public highways, and employees have USDOT registration numbers, they're subject to... That alone does not qualify you. Under the Finn case that's cited in the briefs, the court held in that case that it did. By itself? Yes, by itself. All right, we'll hear from the other side on that exact point, and you'll get your full rebuttal. Thank you. Thank you. Maybe you could pick up with that last point, if you don't mind, this Motor Carrier Act... Certainly, Your Honor. I'd be happy to do that. Good morning. I do represent the Department of Labor, and I'm happy to address any questions that the court has. In particular, the Motor Carrier Act exemption is very specifically limited, and my colleague left out a key part of the public highway definition. You have to be driving or transporting or affecting safety in some way on a public highway in transportation between a state and a place in another state. That is the interstate commerce provision, and that is the only area in which the Department of Transportation has authority to regulate people who are driving, loading, working as mechanics, or doing other safety-affecting duties. So it's crystal clear that the Motor Carrier Act is limited, and the jurisdiction of the Secretary of Transportation is limited to when the transportation affects safety on the public highways in interstate commerce defined as driving between a state and a place in another state, or a state and a foreign country, or between a state on the way to another state. There's a number of different definitions, but essentially they are all requiring you to travel personally, individually traveling out of state. And here it's not continuous because they transform wood into lumber? That's exactly right, Your Honor. There are some cases involving warehouse drivers or beer distribution where they might take a truckload of oil or beer or milk or whatever it may be and put it in a distribution center, and then a different driver takes that load and takes it someplace else. There are many cases that have to be a practical continuity of the product in interstate commerce. And so even though you're stopping at various times, it's really a continuous. The question I had for you was this portal-to-portal act point. So just tell me what I'm missing. So I thought the FLSA exempts lunchtime, getting overtime or compensation for lunchtime, or travel to and And what my understanding of the government's position is that that stood there. Then we have the portal-to-portal act, which somehow creates coverage for something when the portal-to-portal act, I thought by its terms and in design, was supposed to carve out more exceptions for employers. So what am I missing? That seems like a funny argument. Okay. Again, just going to back up a little bit if I can. So just tell me which one of my premises is wrong. Well, the way that the FLSA is designed and written, an employer is supposed to It does exempt. I mean, am I right that it exempts those things? The FLSA, forget portal-to-portal. It certainly can if it's administered properly. But the problem in this particular case is that it's designed and written so that the employer is supposed to record the hours. That's the first thing. So he's supposed to write down if you're working an eight-hour day. If you're working a 10-hour day, the employer is also supposed to record that, and they're generally speaking, for 45 years since 1974 when they expanded the Materials Handling Clause. They're supposed to pay you overtime if you work more than eight hours a day in a standard operation. So it's a normal case where you're going to pay. But part of the question on the eight-hour or 10-hour calculation is when the count starts. And I understood Judge Boyer properly count travel to and from the job and the lunch hour. I think that was the question. I'm curious about that, too. So what does it count again? Yes, Your Honor, that's a very good question. Again, in a typical day, you drive to work. That's your commute time. It's not covered. That's considered preliminary or commuting time. So you don't count that in the workday. When you arrive at your workstation... Can I just stop you there? Yes. And you would agree that's the norm, and the Portal to Portal Act wouldn't change that because it's exempting more. It's not cutting back on exemption. Correct. Right. Normally you would record it. So you would know that the person started work at 9 o'clock. Right. The issues in the Mount Clemens pottery case and all of these various preliminary, post-preliminary, donning and doffing, all of these issues where we have a question as to whether work started at a certain time and stopped at a certain time. You look at what was recorded. You look at the evidence that's presented below. Here, Timberline had a practice. It shows to not record the daily hours. So we had truck drivers who had to go to work and they had to pick up their equipment and they had to load their equipment. They had to put gas in their equipment. Then they did, let's just say, a 10-hour day. And at some point during the day, they may or may not have taken a lunch break. There are no records. No records to show when were they traveling, when were they commuting, when were they taking... Can I just... I think I know where you're going. Yes. Can you tell me if I'm wrong about it? If your point is, given their shoddy record keeping, when it comes to inferences under Mount Clemens pottery or whatever it is, Mount Anderson pottery, you get to make some estimates. That's all good. I get that. But what I don't get is how the estimates can pick up commuting to the job or lunch. So it seems to me you should acknowledge we're not allowed to do that or explain why you are. But I still haven't heard an answer that you are allowed to require compensation for lunch or travel to the job or travel home. Your Honor, there are exceptions when there is a customary practice of compensating for that time. And here we believe that the evidence shows that there was a customary practice. That is what Judge Ludington found below, that there was a written agreement at least with one of the individuals. Did he say a written agreement? With one of the individuals. Now again, there were 50 workers. There were approximately seven for whom time had to be computed. And there were 43 for whom there were some records. Again, they didn't show necessarily all of what's needed. They didn't show the time worked. They didn't show the hourly rate. They didn't show a lot of what we needed to have. But there were some records for most of the 43 of them. If there was a customary practice, let's say, does it follow that those hours are included in determining hours worth? Yes, exactly. How is that? I don't get that. Well, again, just to take the facts of this case, if you have to drive to a location to pick up your heavy equipment, your logging harvester, let's just say it's parked in some location, you have to go there and pick it up. And then you have to take it. So you've begun working because you've begun driving your heavy equipment. You have to take that heavy equipment to a fuel stop to get 100 gallons of gasoline or diesel loaded into it. So that's a certain period of time that is not commuting time. That's considered work time because you're driving that equipment to get the fuel that you need. How about driving from your house to your first stop? Generally speaking, no, that's normally excluded and normally the employer does not require that. Why not always? Why can't you say always? Well, if you had proof of when it happened, see, that's the thing. You're supposed to write down the time at which these things happened. That gets back to my point that you really have an estimate argument, not an argument that you can make them compensate for traveling to work or lunchtime. Well, Your Honor, we're relying on the employer's records. So if the employer had a payroll record that said there were 10 hours of work on a given day, that's really all we know. We don't know the start time, the stop time, the lunch break. I took your argument in this case to mean on Judge White's custom and practice point. I took your argument to mean if a generous employer said, you know, you guys are working so hard, you need a good night's sleep. I'm going to pay you the eight hours you sleep every night. If you had this custom and practice for three years, you could start to make it part of what the hours are in a day. And don't we all agree, no, never? Custom and practice couldn't trump that. I've never seen that except where it's a sleeping overnight in a care situation, in a home care situation. But let me just back up. That, of course, is not what I'm talking about. I'm talking about people that work, you know, let's have a little common sense here. The point of it is nine to five job and you generously decide to just compensate people when they get home to their suburban home and they sleep for eight hours. No one says, ah, the custom and practice becomes a compensable activity, right? There has to be evidence that there was, in fact, such an agreement, Your Honor. And again, here, the agreement is not. Judge Sutton's giving you evidence. He's giving you a hypothetical. Yes. But the point is, I think we are both under the impression that if something was not compensable time under the FLSA, that the Portal Act doesn't make it so. That is correct, although there is an exception. So there is an exception and there is an exception to the exception. Are they relevant? In some cases, for example, if you have a collective bargaining agreement. Are they relevant here? Are the exceptions relevant here? Yes, sir, absolutely. So what are they? Well, first one has to answer the fact question as to whether the time was travel or was it commuting or was it part of the workday. So there's literally the preliminary, post-preliminary fact question. It's not part of the workday. Okay. If they're paying you a day rate or a piece rate, as they did in some of these cases, again, not all, but some of these cases, then they actually have a custom or practice of disregarding the hours and paying you by the piece or paying you by the day. So that could be a 12-hour day, a 14-hour day, a 6-hour day. It's a day rate if that's the agreement. But all of that doesn't give you power to require compensation for lunch or travel to and from work.  You're quite right, Your Honor. If the facts did support that there was a 30-minute lunch break that was – if we had some evidence that that was taken by every worker and taken at a certain time, we could deduct that. Why shouldn't this be sent back to just make it clear that custom and practice can't transform non-compensable work into compensable work? And if you need – if there needs to be more evidence about what exactly was commuting and what wasn't, fair enough. I get that point. Right. Well, I think we actually don't have – the problem with this case, again, just to sort of back up to the very beginning, Timberline had the burden to present evidence of the hours that were actually worked by these individuals. If they chose to present evidence that a certain individual spent three hours, you know, drinking coffee and should not be paid for a particular period of time, they had the opportunity to present that evidence before Judge Ludington below. They failed. They failed repeatedly to present any evidence supporting this argument. That wasn't Judge Ludington's theory on this – on the debate we're having right now. I thought his theory was a custom and practice point. This is why we keep using that phrase. Yes. It seemed like he had a misapprehension. Of course, maybe I'm the one with the misapprehension, but I thought maybe he had one. Right. I'm sorry. This is just to elaborate. Okay, let's say you have someone that has a custom and practice of paying for strictly driving to your first assignment. Okay? So there's no question that it's not – you're not – once you get there and you start fueling and all that stuff, fine. So it's strictly time that doesn't count under the FLSA. But the employer has a practice of paying for it and continues to pay for it. There's no question that they're going to be held to the custom and practice. But for the purpose of counting compensable hours, do you count that time or not? Without the custom or practice, you would normally count that time because normally that would be commuting. I'm sorry. I misspoke. That would be defined as commuting time. You would normally not count that practice under the normal sort of standard operating procedures that are set forth in the preliminary and post-preliminary sections of the Portal to Portal Act. Then you get to the exempt – the exception, which is notwithstanding the previous provisions, the employer should not be relieved of the requirement to pay if such activity is compensable, either because you have written contracts, for example, a collective bargaining agreement that talks about time spent going to the mine, which was the Portal to Portal. That was the original fact pattern. You're traveling to the mine face. Or whereas a custom or practice, in effect, covering such activity, and they're talking about essentially there could be an agreement, either verbal or written, between the employee, between his agent or a collective bargaining representative and the employer. So there are provisions that you sort of, you know, step through one by one. And here what Judge Ludington found is, number one, there's no evidence that they were actually taking a lunch break, which is sort of the first point. There's no evidence of how much of the time was commuting time versus actual time. And, Counselor, let me interrupt you and ask this as you talk about the custom and practice. So where there is no clear establishment of a custom and practice, and there is an absence of evidence on that point at the trial, are you saying there that the court should then construe this against the employer and make an assumption that these times were working? In other words, if there is the employer's responsibility to keep records on the start and stop times and the lunch times and all that, are you saying that where that doesn't happen and where there has not been a custom and practice clearly established, then you would just construe that against the employer and they would pay for the whole range of time? Is that the rule that you're asking us to adopt? I believe that that was the holding of Judge Ludington in this case. Again, it's a fact question. So if there are facts presented below, material facts, disputes of material facts, as to what was the stop and start time, what were the people doing during certain periods of the day, when was the end of the work day, you know, there are always questions. And there are many cases where these issues are litigated quite extensively. Here we just have almost literally no evidence presented by Timberline. All they did was say, here are the payroll journals, and we used their payroll evidence to try to compute the amount of overtime that we think should have been made. I mean, it's clear that this is not the kind of case that's comfortable to say, you know, maybe something like a sheriff's deputy, we have a car there, and this is one of those done-and-done things, and when they get into the car, they need to start. This is not that kind of thing. There's nothing about these people that said, when they enter the vehicle, or their vehicle, or whatever, that it needs to start then. You gave an express example about it. They have to go and take the equipment for fueling. That's a different and identifiable circumstance. It's a fact question for the district court, Your Honor. But even though the portal-to-portal act, well, the exception of customary practice, if there is one, doesn't override the portal-to-portal act or these other regulations that we've been talking about. Well, Your Honor, that's written into the portal-to-portal act. What I was quoting from was Section B. Section A talks about the activities which are compensable or not compensable, and so it excludes, generally speaking, waiting, writing, traveling, commuting time, preliminary and post-preliminary. I think Judge White has a question. I'm sorry. 29 CFR 790.5, do you have that? I'm sorry. I don't have it right in front of me, Your Honor, but I'll do my best to answer. It's the relevant regulation on the portal-to-portal act, right? I have one of them. We have quite a few. Okay, so I'm totally honest. I mean, it's somewhat confusing. But the last clause, employers are not relieved of liability for the payment of minimum wages or overtime compensation for any time during which an employee engages in such activities. This is preliminary. Yeah, and post-preliminary. In such activities thus compensable by contract customer practice. Okay. But where, apart from the portal act, time spent in such activity would not be time worked within the meaning of the Fair Labor Standards Act, although made compensable by contract, custom, or practice, such compensability will not make it time worked under 4D of the portal act. I have to say, Your Honor, I did not cite that particular regulation in my brief, so let me just say off the top of my head, if I may. Is this 790.7? Is that roughly the one you're looking at, or is it 790.5A? 790.5. That's the one you have? Yeah. Why don't you take a look at 790.7 and 790.5, all right? And if you think there's anything in there that you want to tell us about in a letter, that's great. And we'll give the other side. Can I make two really brief points? One is the continuous workday principle, which is... A brief with very few dependent causes. Yes, that's it. Continuous workday principle, that's all I wanted to say. Okay, great. And then the other one is I think that I misspoke when you asked me the question about the overnight, sleeping overnight. Section C of the Portal to Portal Act states that the activity shall be compensable only when it is engaged in during the portion of the day with respect to which it is made compensable. So, again, it's trying to cabin the workday as opposed to the non-workday. Got it. All right. Thank you. Thank you. Mr. and Mrs. Thurr? Toyer. Toyer, okay. Your Honor, in this case there was evidence before the judge. There was what? There was evidence before the judge that drive to work time from home to the job site was included in the time cards for the employees that filled them out. And, again, there were 47. It was included. It was not. You need to speak up. You said was not or was. There was evidence before the judge. And that is in our... Okay, you still got to say the whole sentence. I'm sorry. I got the there was evidence. Okay. Finish it. I'm sorry, Judge. Yeah, Judge. There was evidence before the district court in this case that employees included drive to work time from their home to the job site that is ordinarily not compensable under the Fair Labor Standards Act. That was included in their total hours. And those hours were the ones that the investigator in this case used to calculate the overtime requirements in this case. That is a violation of the Portal to Portal Act. Those were in Exhibit K to our initial brief on damages. Again, we had three rounds of damages because the calculations had mistakes in them repeatedly in this case. But in the very first one, we attached five declarations from employees who testified that they included time when they wrote it down on their time cards that included all of that preliminary and post-preliminary time because the employer in this case voluntarily chose to pay it, just as you were discussing before. And the interesting thing here is that... It absolutely does because that's the only time the investigator used. She was saying part of the problem here on damages was the records were so bad. You're telling me the records are clear. The records were not bad. The records were misinterpreted by the investigator. And again, because there was no evidentiary hearing in this case, we never had a chance to cross-examine him on the second two sentences. You asked for an evidentiary hearing? Well, we said that we did in our briefs make the claim that there was no opportunity to cross-examine him. We didn't make a formal request. However, the declarations were in front of the court and the court chose not to consider them apparently. In addition to Section 790 of the Code of Federal Regulations, which was cited by the court previously, there are other sections that apply to this as well. 29 CFR 785.35 says normal travel from home to work is not work time. That's for purposes of calculation. More significantly is 29 CFR 857... Let me try it again. 29 CFR 785.34. That section provides ordinary travel from home to work need not be counted as hours worked even if the employer agrees to pay for it. Real quickly, just to make sure I'm getting all this. You have a generous employer and says we're going to treat time. It's a 40 hours a week job. We'll pay overtime over 40 hours. So this is just our system. That's what they're saying. It's not required by FLSA. This is just what they're doing. And they're saying we want you there at 730 and we're going to assume it takes a half hour. So we're going to start the clock at 7. Your time card can start at 7. And you leave at 3 and we realize you're going to take an hour at lunch. We don't care. In fact, we'll say you leave at 230. So we're compensating for time home. So we see it as 7 to 3 each day. Every time you do something before 7 or after 3, you get time and a half. If that's what you've been doing for years and that's how you set the beginning and the end of the day, your view is under the Portal to Portal Act, you can't be held responsible if someone brings an overtime claim for that time at lunch, the half hour at the end of the day, or the half hour at the beginning of the day. And you think that's pretty straightforward in the regs. Did you understand what I'm saying? Yes, with one caveat. And that's that your example used the idea that for those pre and post that they would be paid time and a half. No, no. I was saying it's only time and a half because I contemplate it in an 8-hour day. 7 to 3 is an 8-hour day. So I'm contemplating 7 to 3. If you do anything beyond 3 or before 7, you get your time and a half under that custom and practice of that generous employer. So in that situation, you get a claim that comes in and it starts to look more like this case, and they want to include the half hour before, the half hour end, and the lunch. Your view is the regs just forbid that no matter how long that custom has existed. Yes, that's what the regulations say. All right. Then I understand it. All right. Thank you. Did something happen? We were warned about that. Judge Donald, can we hear you? Are you there? Judge Donald, let us know if you're there. Okay. All right.